DOUCET, Judge.
This is an appeal from a judgment notwithstanding the verdict whereby the trial court judge increased the jury’s award of damages to the plaintiff.
On January 9, 1986, the plaintiff, Barbara Tabarelli, was driving on Louisiana Avenue in Lake Charles on her way to pick up her daughter at school. She slowed for a stopped vehicle ahead of her. She was hit from the rear by a car driven by Nelson J. Lavergne and owned by Martin Lav-ergne. As a result of the rear end collision, she was pushed across the median. There, her front bumper was brushed by an oncoming delivery truck.
Ms. Tabarelli filed suit against Nelson Lavergne; Allstate Insurance Company, the insurer of the vehicle he was driving; and American Manufacturers Mutual Insurance Company (AMMIC), her own uninsured motorist carrier.
The matter was tried before a jury. On February 9, 1988, the jury returned a verdict finding Nelson Lavergne to be at fault in the accident and awarding a lump sum of $25,000 to Ms. Tabarelli. On February 25th, the trial judge signed a judgment based on the jury verdict. On February 26, 1988, the plaintiff filed a motion for judgment notwithstanding the verdict. On March 26, 1990, almost two years after taking the matter under advisement, the trial judge issued written reasons for granting the judgment notwithstanding the verdict. A judgment to the effect was signed on July 27, 1990. The award to Barbara Tabarelli was increased to $71,-331.37, $26,331.37 as a special damages award and $45,000.00 for pain and suffering.
The defendant, AMMIC, appeals the judgment notwithstanding the verdict.
JUDGMENT NOTWITHSTANDING THE VERDICT
A trial court may grant a JNOV only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach a contrary verdict. If there is substantial evidence opposed to the motion: i.e. evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion must be denied. Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986). In considering a motion for JNOV, the trial court must construe all evidence and reasonable inferences to be made therefrom in favor of the party opposing the motion. Trans Global Alloy v. First Nat. Bank, 564 So.2d 697 (La.App. 5th Cir.1990); Zeagler v. Dillard Dept. Stores, Inc., 521 So.2d 766 (La.App. 2d Cir.1988). Further, the trial court may not weigh the evidence, pass on credibility of witnesses or substitute its own judgment for that of the jury. Wooten v. Louisiana Power & Light Co., 477 So.2d 1142 (La.App. 1st Cir. 1985). Basically, a JNOV can be granted by a trial court only when a jury’s verdict is one which reasonable men could not have rendered. Adams v. Security Ins. Co. of Hartford, 543 So.2d 480 (La. *685 1989). The standard to be applied by appellate courts in reviewing the grant of a JNOV is whether the trial court’s findings in rendering the JNOV were manifestly erroneous. Stafford v. Unsell, 492 So.2d 94 (La.App. 1st Cir.1986).
Hutchinson v. Wal-Mart, Inc., 573 So.2d 1148, 1151 (La.App. 1st Cir.1990). See also Barnes v. Thames, 578 So.2d 1155 (La.App. 1st Cir.1991), writ denied, 577 So.2d 1009 (La.1991).
A judgment notwithstanding the verdict is a procedurally correct device for raising or lowering an unreasonable damage award. La.C.C.P. art. 1811(F); Lilly v. Allstate Insurance Co., 511 So.2d 80 (La.App. 1st Cir.1991), writ denied 578 So.2d 914 (La.1991). Accordingly, the issue currently before us is whether the verdict was one that a reasonable jury could reach.
The Louisiana Supreme Court set out the standard for determining whether or not a damage award is reasonable, or within the jury’s much discretion, in Reck v. Stevens, 378 So.2d 498 (La.1979). Although Reck dealt with the standard of review to be used by an appellate court' to determine the adequacy of a trial court’s damage award, the same standard applies to a trial judge’s determination of the adequacy of a jury’s verdict as to damages. (Citation omitted)
Lilly, supra at p. 83.
The plaintiff, Ms. Tabarelli, contends that the jury verdict was clearly inadequate and an abuse of the jury’s discretion because it represented an amount equal only to her special damages and included no award for general damages. The plaintiff argues that she proved special damages as follows:
Medical expenses prior to trial $12,150.97
Rental replacement vehicle 1,170.40
Future medicals — surgery 10,500.00
Future medicals — follow-up 2,500.00
TOTAL $26,321.37
If this is correct, then the jury award of $25,000.00 was inadequate. In that case, the judge correctly granted the judgment notwithstanding the verdict. A jury may not award special damages and refuse to award general damages for personal injuries which present objective symptoms. Jones v. Northbrook Insurance Co., 544 So.2d 742 (La.App. 3rd Cir.1989), writ denied, 548 So.2d 1234 (La.1989).
The defendant (AMMIC), does not contest the award for prior medical expenses. Rather, it contends on appeal that the medical testimony with regard to the existence of a disc injury and the necessity of surgery was inconsistent. As a result, the defendant argues that the jury had before it sufficient evidence, based on a reasonable credibility evaluation, to support the verdict. Accordingly, the defendant contends that the trial judge erred in granting judgment notwithstanding the verdict.
PLAINTIFF’S INJURIES
Following the accident, Tabarelli drove away in her own car. She picked up her daughter at school and returned home. She called her husband. He took her to the emergency room. There, she was diagnosed as having sustained a “whiplash” or neck strain. She was given medication and told to see a doctor if the injury did not improve.
Ms. Tabarelli was referred by her attorney to Dr. Donald England, a chiropractor. She began treatment January 17, 1986. She saw Dr. England approximately 39 times over a period of eight months. She felt no improvement and continued to complain of pain. Dr. England referred her to Dr. Gunderson, an orthopedic surgeon.
Dr. Gunderson treated Ms. Tabarelli from August 1986, until February 1987. His initial examination of her on August 29, 1986, was substantially normal. He diagnosed a straining injury to her neck and lower back. He prescribed an anti-inflammatory medication. She did not return to see him until January 1987. She continued to complain of neck pain. She also complained of pain in her left shoulder and arm. Her motor and sensory examination was normal. However, based on the continued complaints of pain, Dr. Gunder-son admitted her to the hospital in order to conduct a cervical myelogram. He felt *686 that the test revealed a ruptured disc in her neck.
Dr. Gunderson referred Ms. Tabarelli to Dr. Dean Moore, a neurologist, for a second opinion. He saw Ms. Tabarelli on January 28, 1987. Upon examination he found sensory deficits which he felt confirmed a disc injury. He felt she had a disc injury at the C6-7 level and thought she might have another at C5-6. He recommended a CT scan, which was run. Both Doctors Gun-derson and Moore felt it showed a small defect at the C6-7 level.
Ms. Tabarelli saw Dr. Gunderson again on February 20, 1987. He recommended surgery. Ms. Tabarelli told him that she was enrolled at McNeese State University and wanted to wait until the end of the semester for the surgery. She never returned to Dr. Gunderson.
On January 28,1987, Ms. Tabarelli began seeing Dr. William Foster, a neurosurgeon, to get a second opinion regarding surgery. He prescribed an anti-inflammatory medication and Percodan, a strong narcotic. He admitted on cross-examination that certain clinical findings were absent on physical examination which one would expect to find in cases of disc injuries requiring surgery. He reviewed the myelogram report and noted that the radiologist who ran it found a small anterior extradural defect at C6-7. Dr. Foster had an EMG run on Ms. Tabar-elli which revealed a congenital fusion at the C7-T1 level. He stated that this could cause some of the abnormal clinical findings he had noticed including sensory loss and limitation of motion. He admitted that it could ultimately create the small defect at C6-7 shown in the diagnostic studies.
Dr. Gerald R. Litel, a neurosurgeon, conducted an independent medical examination of Ms. Tabarelli on August 31, 1987. He accepted her complaints of neck pain and stiffness. However, he noted an absence of clinical findings which normally occur where a bulging or ruptured disc is present. He felt that the patterns and kinds of pain of which Ms. Tabarelli was complaining were not those normally found with a disc injury at C6-7. Dr. Litel reviewed a film of a magnetic resonance imaging taken of Ms. Tabarelli’s neck in June 1987. It revealed a congenital fusion at the C7-T1 level. Dr. Litel also reviewed the myelogram and CT scan studies previously run on Ms. Tabarelli. He felt that they did not reveal sufficient confirmation of a disc injury to support a decision to operate.
CONCLUSION
Construing the evidence introduced at trial in favor of the party opposing the judgment notwithstanding the verdict, the jury could reasonably have found that Ms. Tabarelli did not have a problem which would require surgical intervention. Given that factual finding, a lump sum award of $25,000.00 was not inadequate. The trial judge was manifestly erroneous in substituting his own credibility evaluations and factual findings for those of the jury.
Accordingly, the judgment notwithstanding the verdict rendered by the trial judge is vacated and the original judgment reflecting the jury verdict is reinstated. Costs of this appeal are assessed against the plaintiff.
REVERSED, AND JURY AWARD REINSTATED.