|,YELVERTON, J.
State Farm Mutual Automobile Insurance Company (State Farm) was cast in judgment for personal injury damages in excess of its policy limits. State Farm’s insured was not a defendant in the case, the suit having been filed as a direct action against the insurer alone. There were two reasons why the judgment was rendered in excess of the policy limits. First, the actual damages as to one of the plaintiffs, Michael Dipuma, justified the award, and second, State Farm failed to put on its coverage limitations: it neither pleaded its policy limits nor did it introduce the policy into evidence. As a consequence the judgment for $33,180.81 in favor of the plaintiff | PMichael Dipuma (less 25 percent comparative fault) exceeded State Farm’s policy limitation of $10,000 per person as well as the limitation of $20,000 per accident.
State Farm filed a motion to correct the judgment and in the alternative for a new trial. The motion was based on two grounds: the judgment did not reflect the policy limits nor did it give credit for amounts previously paid to the plaintiffs by State Farm ($1,202.88 to Dipuma and $400 to Kathy Willis, the other plaintiff) before suit was filed. The trial judge granted the motion as to the credits for previous payments, the evidence of which was already in the record, and ordered a new trial as to the policy limitations to allow State Farm to introduce the policy. The policy was introduced at the new trial, and a judgment was then rendered recognizing not only the credits but also State Farm’s limits of liability.
Michael Dipuma appealed. He complains that there was no good ground for a new trial and that we should reverse and allow him to recover from State Farm as if there were no policy limits. He does not dispute the credits for previous payments.
ISSUE
The issue is whether the trial court abused its discretion in granting a new trial to allow the introduction of the policy.
STANDARD OF REVIEW
A trial court has virtually unlimited discretion to grant a new trial when it is convinced that a miscarriage of justice has resulted and, unless an abuse of discretion can be demonstrated, a trial court’s action in granting or denying a new trial on 13discretionary grounds will not be reversed. Louisiana Code of Civil Proce *684 dure art.1973; Watson v. Nelson, 97-474 (La.App. 3 Cir. 10/29/97); 702 So.2d 1002, writ denied, 97-2958 (La.2/6/98); 709 So.2d 738.
PROCEDURAL AND OTHER FACTS
Michael Dipuma was a guest passenger in a vehicle that was involved in an automobile accident with another vehicle operated by Roni C. Gill (Mrs. Gill). Dipuma (and the other plaintiff) sued State Farm for damages. Article 7 of their petition alleged that State Farm had issued a policy of public automobile liability insurance to Ronald C. Gill (Mrs. Gill’s husband), it was in full force and effect, and “it provided coverage for the damages complained of herein.”
In their petition, the plaintiffs also requested that State Farm be ordered to produce for inspection the original or certified copy of any policies of insurance providing coverage for the damages sued upon. An order was attached to the petition and signed by the district judge ordering State Farm to produce the policy for inspection within thirty days of August 22, 1994. State Farm never produced the policy.
In article 7 of its answer to the petition, State Farm admitted that it had issued a policy that was in full force and effect, “and further that said policy is the best evidence of its contents, provisions and limitations all of which are especially pled herein.” The transcribed record of the trial on the merits was not sent to us, but the minutes were, and according to the minutes there was a stipulation that “State Farm 1¿had issued a policy to insured and the policy was in effect on the date of the accident.”
On the same day that the answer was filed, State Farm moved for summary judgment on the ground that it had paid and settled with the plaintiffs and they had executed releases. Both at the summary judgment stage and later at the trial on the merits, these releases, which had been signed by Dipuma and the other plaintiff three days after the accident and purported to release State Farm, Ronald Gill and Roni Gill, the owner and driver respectively of State Farm’s insured vehicle, made up the most serious issue in the contest. The releases were in writing and showed a consideration of $1,202.88 paid to Dipuma and $400 paid to the other plaintiff. Finding a disputed issue of material fact, the trial judge denied the motion for summary judgment. The effect of the releases was then tried with the merits of the tort suit. In his written reasons for judgment after the trial on the merits, the trial judge regarded the effect of the releases as the “most serious issue in this case.” The trial judge ruled against State Farm on this issue finding that, while the State Farm adjuster was not guilty of any fraud or improper conduct, there was evidence that the plaintiffs reasonably thought that they were signing releases for something less than full settlement.
The trial judge then decided the questions of liability, apportionment of fault, and damages. Dipuma was awarded a total of $33,180.81, and the other plaintiff was awarded $10,809.65. Both awards were reduced by 25% based on a comparative fault finding.
Is After the judgment on the merits was rendered, State Farm acquiesced in the rulings as to the releases, liability, apportionment of fault, and the amount of damages. The relief that it sought, as explained earlier, was a new trial and reduction of its liability, in Dipuma’s case, by the amount of the $1,202.88 it had already paid and its limitation of maximum liability to $10,000.
In its reasons for judgment granting the new trial for the purpose of allowing the introduction of the policy, the trial court stated that it was “apparent to the Court ... that all of the parties were referring to the policy of insurance that Ronald Gill had purchased from State Farm and that this policy should be introduced and made part of these proceedings.” Based on how *685 this case was developed and how it was tried, we interpret these trial court observations to mean that the trial court believed that all parties knew what the policy limitations actually were. We think the trial judge meant that no one was mislead, everybody knew what the policy limits were, and the absence of the policies in the record was a mere technicality.
MERITS
We are being asked to find that the trial court abused its discretion in granting a new trial to State Farm. The permissive range of the trial court’s discretion in this kind of matter is, as we have pointed out earlier, virtually unlimited. We need formidable reasons indeed to find an abuse of discretion.
The appellant relies on the case of Williams v. Bernard, 425 So.2d 719 (La. 1983), because of its similar facts. An insurer failed to introduce evidence of the policy limits and the trial court rendered judgment in favor of a plaintiff in excess of Lthe policy limits. The denial of a motion for a new trial was affirmed in Williams. The court found that it was the deliberate choice of the insurer’s trial attorney to withhold evidence of the policy limits as a trial tactic, and not a case where justice was thwarted by the excusable neglect or inadvertence of trial counsel by his failure to introduce a crucial item of evidence. The supreme court concluded that the trial judge’s exercise of his discretion was not “unmistakably erroneous”. The court’s analysis included the observation that “[wjhether a new trial should be granted in such situations requires the trial judge to weigh a variety of considerations for which a clear cut rule of law cannot easily be formulated.” Williams 425 So.2d at 720.
The Williams case supports our decision herein, and we also find that our trial judge’s decision was not unmistakably erroneous. Our decision to affirm has not been without difficulty, because undoubtly there were considerations known and weighed by the trial judge which are not in the record before us. For example, we do not know but can only infer that the trial court believed that State Farm had an excusable reason for not producing or introducing the policy before the judgment was rendered. Certainly it was State Farm’s responsibility to produce the policy as an element of its burden of proof, having in its answer pleaded the contents, provisions and limitations of the contract. Moreover, in this particular case, State Farm was under the constraint of an order of court to produce the policy to the plaintiffs as a discovery obligation. At the hearing on the motion for new trial, State Farm’s explanation for its failure to introduce the policy was not of much help to the trial court and is of no help to us. It has failed to file a brief on this appeal so we have been denied the benefit of that usual source of enlightenment as to its motives. These ^considerations might weigh in favor of refusing to grant a new trial in this case, but our appellate decision is not to determine de novo whether or not a new trial should have been granted. Our job is to decide whether the trial judge abused his almost limitless discretion in granting one.
The factors that favor a finding that the trial judge did not abuse his discretion start with the fact that the policy was one having limits of $10,000 and $20,-000. No one disputes that to be a fact. Also, we take judicial notice that public liability insurance limits in a policy is information available to plaintiffs from sources other than looking at the policy itself. A knowledge of the policy limits is a necessary part of trial preparation whether or not the insured tortfeasors are named as defendants. It is true, just as Dipuma argues, that there is nothing in the record showing that the reason for not introducing the policy was inadvertence or excusable neglect. On the other hand, there is no good reason to substantiate that it was a trial tactic, as argued by Dipuma, to protect State Farm’s Gill insureds from exposure to an excess judgment. Such a tactic might not have prevailed under the solidary liability laws as they stood when this accident occurred, because the Gills could have been brought into the action as *686 long as the suit was pending, even after the motion for a new trial was granted and before a final judgment was rendered. Hebert v. Doctors Memorial Hospital, 477 So.2d 1227, 1230 (La.App. 1 Cir.1985),writ granted, 480 So.2d 734 (La.1986), reversed and remanded an other grounds, 486 So.2d 717 (La.1986).
Thus we are left with only the record itself to ferret out the reasons why the trial judge felt granting a new trial was the right thing to do. It is reasonable to deduce that State Farm, buoyed by its confidence that it would prevail in its reli-ancej^on the releases, simply overlooked the technical importance of putting the policy limits in the record. Had the trial court ordered State Farm to produce the policy into evidence, its failure to do so might be deemed inexcusable. However, the order of the trial court was not that State Farm produce the policy into evidence, but rather that it produce the policy to the plaintiffs counsel. To the extent that the purpose of the production was to acquaint counsel with knowledge of the policy limits, the failure to produce might be arguably forgivable if everybody knew what the policy limits were.
What it comes down to is that the trial court regarded the introduction of the policy as a technicality. He had to choose between either allowing a windfall to one party and an injustice to the other, or rendering a judgment based on the facts and the truth. We will attribute to the trial judge’s choice of alternatives the intention “to approve the meting out of justice upon the merits of a controversy, rather than the defeating of justice by applying technical rules in the trial of lawsuits.” Succession of Robinson, 186 La. 389, 172 So. 429 (La.1937).
For the above and foregoing reasons, judgment of the trial court is affirmed. Appellant will pay costs of this appeal.
AFFIRMED.